UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** : | Criminal No. 13- |
| v. : | **UNDER SEAL** |
| **PAYQUITAH JOHNSON WHITE,** : | VIOLATION: |
| : | 18 U.S.C. § 286 (Conspiracy to Defraud the Government with Respect to Claims) |
| Defendant. : | |

## INFORMATION

The United States Attorney charges that:

## COUNT ONE - CONSPIRACY

### INTRODUCTION

A.  **Overview Regarding Tax Matters**

At all times relevant herein:

1.  The Internal Revenue Service (IRS) is an agency of the United States of America, Department of the Treasury, maintaining its headquarters at 1111 Constitution Avenue, NW, Washington, D.C. The IRS has responsibility for administering provisions of the Internal Revenue Code and for the collection of income taxes.

2.  Absent the grant of an extension, individuals who earn income in excess of certain minimums are required to file a Form 1040 U.S. Individual Income Tax Return no later than April 15th of the calendar year immediately following the tax year.

3. A Form 1040 is a tax form used by an individual to report taxable income from wages and/or from self-employment. An activity qualifies as a business if the primary purpose for engaging in the activity is for income or profit and the taxpayer is involved in the activity with continuity and regularity.

4. A Schedule C - Net Profit From Business is used to report profit or loss from a sole proprietorship. The form supports and is attached to an individual's Form 1040. Profit or loss reflected on the Schedule C, is also reported on the Form 1040. A Schedule C-EZ is a simplified version of the Schedule C, which is used when, among other factors, business expenses do not exceed $5,000, and the business has no employees or inventory.

5. Adjusted Gross Income is total gross income minus specific reductions.

6. The Earned Income Tax Credit (EITC), is a tax credit intended to help taxpayers keep more of what they earn. It is a refundable federal income tax credit for low- to moderate-income working individuals and families. Congress originally approved the tax credit legislation in 1975 in part to offset the burden of social security taxes and to provide an incentive to work. When EITC exceeds the amount of taxes owed, it results in a tax refund to those who claim and qualify for the credit. In order to qualify, the taxpayer must meet certain requirements and file a tax return, even if the taxpayer does not owe any tax or is not required to file an income tax return.

**B.    The Identity Theft and False Claims for Federal Income Tax Refund Conspiracy**

7. At all times relevant herein, an extensive network of over 100 individuals, many of whom were receiving some type of public assistance, engaged in a massive sophisticated identity theft and false tax refund scheme in the District of Columbia and elsewhere, seeking over $20 million in fraudulently claimed income tax refunds. During the approximate period 2006 through

present (for tax years 2005 through 2012) the co-conspirators caused the filing of at least 7,000 fraudulent federal income tax returns listing one of over 436 addresses located in the District of Columbia as the "taxpayer" address. Some of the addresses were used to file more than 100 fraudulent federal income tax returns in a single year.

8. Identity theft victims whose identifying information was used on fraudulent federal income tax returns include the elderly; those living in assisted living (including Alzheimer's patients and the disabled, including amputees); drug addicts; and incarcerated prisoners. Identifying information of deceased persons and of children whose parents sold their child's name, date of birth, and social security number was also utilized.

9. The co-conspirators utilized the stolen means of identification, including names and social security numbers, of at least 14 patients of a nursing home, ten of whom were over the age of 65 when their stolen identities were used. The patients whose identifying information was stolen included: "A. W.," "C. S.," "E. G.," "F. R.," "H. H.," "J. R.," "J. J.," "J. I.," "M. W.," "M. T.," "R. E.," "R. J.," "S. B.," and "W. H." Five of these individuals, "E. G.," "H. H.," "J. R.," "J. J," and "W. H." were deceased at the time when their means of identification was used in the scheme alleged herein.

10. The tax fraud scheme involved using inflated Adjusted Gross Income (AGI), by creating and utilizing fraudulent Schedules C to reflect income sufficient to generate a tax refund based upon the Earned Income Tax Credit.

11. The scheme involved co-conspirators operating at various levels, each being financially compensated for his or her particular role, including:

A. Those agreeing to allow their personal identifying information to be used on one or more fraudulent federal income tax returns. If the "taxpayer" was a willing participant in the scheme who provided his or her identifying information to a co-conspirator, the "taxpayer" would accompany a co-conspirator to a check cashing service, liquor store or financial institution to negotiate the check.

B. Those permitting their residential address to be used for the delivery of U.S. Treasury checks, which were federal income tax refunds, in the names of persons who did not in fact reside at the address;

C. Those opening a bank account or using an existing bank account for the purpose of negotiating fraudulently obtained U.S. Treasury checks, which were federal income tax refunds, issued in the names of third parties, including victims of identity theft;

D. Those forging the endorsement of an identity theft victim on the back of a U.S. treasury check which was a fraudulently obtained federal income tax refund;

E. Those stealing the personal identifying information of patients who were incapacitated and residing at a nursing facility, patients receiving treatment at medical facilities, persons who were incarcerated, and deceased persons, which information would be used in the scheme;

F. Employees of financial institutions who facilitated the negotiation of fraudulently obtained U.S. Treasury checks, which were federal income tax refunds.

G. One or more U.S. Postal Service Mail Carriers who facilitated the delivery to co-conspirators of fraudulently obtained U.S. Treasury checks, which were federal income tax refunds.

H. Those creating and mailing to the Internal Revenue Service fraudulent federal income tax returns, Forms 1040, which contained either stolen or purchased means of identification, forged "taxpayer" signatures, and which listed as the "taxpayer's" residential address the address of a co-conspirator or associate, and falsely claimed that the "taxpayer" operated a Schedule C business as a "barber," claiming income sufficient to generate a tax refund based upon the EITC, and also fraudulently claimed dependents, who were not the dependents of the "taxpayer" listed on the income tax returns, resulting in the issuance of a fraudulent federal income tax refund.

I. The identity theft victims in this case were unaware that their means of identification was being used to file income tax returns, did not receive the U.S. Treasury checks which were fraudulent income tax refunds, and did not endorse the checks or receive any of the proceeds. In addition, the identity theft victims are not related to the "dependents" listed on the fraudulent income tax returns, never resided at the addresses listed on the fraudulent federal income tax returns or on the Treasury checks that were issued, and never worked as barbers.

12. In some cases, individuals unwittingly turned over their identifying information to a co-conspirator after being told that they were due an income tax refund or were entitled to some "Obama Stimulus Money."

13. Unindicted co-conspirators who agreed to have the fraudulent U.S. Treasury checks, which were federal income tax refunds, mailed to their residence typically received in exchange approximately $150 per check. Those who negotiated such checks typically received in exchange approximately $250 per check. Larger amounts of money were earned by those who solicited others to allow their addresses to be used for the receipt of fraudulently obtained U.S. Treasury checks and

those who masterminded the scheme and created and mailed the fraudulent federal income tax returns.

14. All of the fraudulent income tax returns sought refunds. Many of the said tax returns listed the "taxpayer's" home address as an address located in the District of Columbia. District of Columbia taxpayers seeking a federal income tax refund are required to file their income tax return with the IRS Service Center in Kansas City, Missouri. In an apparent effort to frustrate IRS fraud detection efforts, the returns filed were mailed to various IRS Service Centers, nationwide.

15. For the approximate period 2006 to present, the above-described scheme caused the filing of at least 7,000 fraudulent federal income tax returns, Forms 1040, seeking income tax refunds of at least $20 million, and caused the issuance of fraudulent U.S. Treasury checks, that is income tax refunds, which were delivered to various addresses located in the District of Columbia and elsewhere.

C. **Defendant Payquitah Johnson White's Role in the Scheme**

16. At all times relevant herein, defendant **PAYQUITAH JOHNSON WHITE** resided at a residence located in the District of Columbia.

17. Defendant **PAYQUITAH JOHNSON WHITE** was a co-conspirator in the identity theft and tax fraud scheme described herein. Among other things, defendant **PAYQUITAH JOHNSON WHITE**:

A. Permitted her D.C. residential address to be used for the receipt of 45 (forty-five) U.S. Treasury checks, which were fraudulent income tax refunds, totaling approximately $119,944.91, sent via the U.S. mails, issued in the names of other persons who did not reside with defendant **PAYQUITAH JOHNSON WHITE** and who she did not know, for which she received approximately $100 per check.

B.  Received from a co-conspirator 36 (thirty-six) U.S. Treasury checks, which were fraudulent income tax refunds, totaling approximately $103,953.46 obtained in the scheme which were issued in the names of third party "taxpayers," and endorsed said checks by signing her own name and deposited said checks into her bank account at Bank of America, account number XXXXXXXX-0131, so the checks would be negotiated.

C.  Provided the proceeds of the checks which she had deposited into her bank account, less her portion of the proceeds, which was approximately $200 to $300 per check, to a co-conspirator.

D.  Recruited another individual to deposit into a bank account owned by him, in order to negotiate, U.S. Treasury checks, which were fraudulent income tax refunds, issued in the names of other persons.

## THE CONSPIRACY

18.  From on or about January 8, 2010, and continuing until on or about July 30, 2010, within the District of Columbia and elsewhere, the defendant, **PAYQUITAH JOHNSON WHITE**, unindicted co-conspirators, and other individuals whose identities are known and unknown, did unlawfully, knowingly, and willfully, conspire and agree together and with each other, to defraud the United States of America and an agency thereof, that is the Internal Revenue Service, of monies in the approximate amount of $223,898.37 through the filing of 45 (forty-five) fraudulent Form 1040 U.S. Individual Income Tax Returns and the negotiation of 36 (thirty-six) U.S. Treasury checks, which were fraudulent income tax refunds.

## **THE GOAL OF THE CONSPIRACY**

19. It was the goal of the conspiracy that the defendant, **PAYQUITAH JOHNSON WHITE**, unindicted co-conspirators, and other individuals whose identities are known and unknown, would enrich themselves and obtain money by negotiating U.S. Treasury checks, which were federal income tax refunds, generated by filing fraudulent Form 1040 U.S. Individual Income Tax Returns, the Schedules C-EZ Net Profit From Business, attached and in support of which, falsely stated that each "taxpayer" had been self-employed, including such work as a "barber" during the tax year, and falsely stated that the "taxpayer's" business had gross receipts and that the "taxpayer" had at least two dependent children, when in fact, the "taxpayer" was either a victim of identity theft, was misled into providing his or her identifying information or was a willing participant in the scheme; no such business had been operated by the "taxpayer;" and the "taxpayer" had no such dependents; all of which caused fraudulent income tax refunds to be issued via U.S. Treasury checks that were mailed to various addresses located in the District of Columbia and elsewhere.

## **MANNERS AND MEANS**

20. In order to further the objects and goals of the conspiracy, the defendant, **PAYQUITAH JOHNSON WHITE**, unindicted co-conspirators, and other individuals whose identities are known and unknown, used the following manners and means, among others:

A. Unindicted Co-conspirator "K.B.," would create fraudulent Form 1040 U.S. Individual Income Tax Returns, the Schedule C-EZ Net Profit From Business, attached and in support of which, falsely claimed that each "taxpayer" had been self-employed, including as a "barber," falsely stating that the "taxpayer's" business had gross receipts and that the "taxpayer" had at least two dependent children.

B.     Unindicted Co-conspirator "K.B." would mail the fraudulent Form 1040 U.S. individual Income Tax Returns, described in 20A, above, by placing them in the United States Mail for delivery to an IRS Service Center.

C.     When a U.S. Treasury check was mailed to the "taxpayer" address listed on the Form 1040 U.S. Individual Income Tax Return, in general, the co-conspirator whose address had been used on the income tax return, "Co-conspirator A," would contact another co-conspirator to have that person, "Co-conspirator B," pick up the check. "Co-conspirator B" would pay "Co-conspirator A" for serving as the mail recipient to receive said check and would take the check to a third co-conspirator, "Co-conspirator C," who would cause the check to be negotiated. "Co-conspirator B" would also pay "Co-conspirator C" who had negotiated the check. Co-Conspirator B would keep a portion of the check proceeds and deliver the remainder of the proceeds to Co-conspirator D. A particular co-conspirator may have served in more than one role in a transaction and may have switched roles in different transactions during the conspiracy.

D.     Some of the co-conspirators who negotiated U.S. Treasury checks, which were fraudulent income tax refunds obtained in the scheme, were bank tellers at financial institutions who received said checks from a co-conspirator. When receiving such checks, some tellers would look through bank records to find customer accounts that had large dollar balances and would deposit one or more said U.S. Treasury checks into a particular customer bank account without the customer's knowledge in order to negotiate the check. When the check cleared, such bank tellers would notify the co-conspirator who had delivered the checks to him or her and deliver proceeds of the said checks to the co-conspirator. Other tellers would assist a co-conspirator to open a business bank account using stolen identifying information of another person. A co-conspirator would then deposit

U.S. Treasury checks obtained in the scheme into the newly opened bank account so the checks could be negotiated. In exchange for his or her role in the scheme, such bank tellers would receive a portion of the check proceeds. The remaining proceeds from each check was shared among other co-conspirators.

## OVERT ACTS

21. Within the District of Columbia, and elsewhere, in furtherance of the above-described conspiracy and in order to carry out the objects thereof, the defendant, **PAYQUITAH JOHNSON WHITE**, unindicted co-conspirators, and other individuals whose identities are known and unknown, committed the following overt acts, among others:

A. On or about April 8, 2010, unindicted co-conspirator, "K.B.," prepared a 2008 Form 1040 U.S. Individual Income Tax Return and related Schedule C-EZ, in support thereof, in the name and with the social security number of "D.H.," bearing a Washington, D.C. "taxpayer" address. Said tax return claimed that "D.H." operated a principal business or profession as a "barber," had two dependents, "D. L. C." and "D. K. C.," and further claimed that the "taxpayer" was entitled to a federal income tax refund in the amount of $2,116.

B. On or about April 8, 2010, unindicted co-conspirator, "K.B.," mailed the tax return described in paragraph 21A, above, to "Internal Revenue Service, Kansas City, MO 64999-2008," by placing said tax return in the U.S. mails from Washington, D.C.

C. On or about May 28, 2010, the defendant, **PAYQUITAH JOHNSON WHITE**, received in the mail at her Washington, D.C. residence, a U.S. Treasury check addressed to "D. H.," dated May 28, 2010, listing her own address as "D.H.'s" address.

D.      On or about May 28, 2010, the defendant, **PAYQUITAH JOHNSON WHITE**, signed the name of "D. H." as endorsement and she also endorsed with her own signature, on a U.S. Treasury check dated May 28, 2010, payable to "D. H.," in the [adjusted] amount of $3,025.99.

E.      On or about June 3, 2010, the defendant, **PAYQUITAH JOHNSON WHITE**, deposited the check described in paragraph 21 D above, into her bank at Bank of America, account number XXXXXXXX-0131, causing the check to be negotiated and she received the check proceeds.

(**Conspiracy to Defraud the Government with Respect to Claims**, in violation of Title 18, United States Code, Section 286).

RONALD C. MACHEN JR.
UNITED STATES ATTORNEY
and for the District of Columbia
D.C. Bar No. 447889

By: *[signature]*
SHERRI L. SCHORNSTEIN
Assistant U.S. Attorney
D.C. Bar No. 415219
555 4th Street, N.W.
Washington, D.C. 20530
(202) 252-7883